NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

JASMAINE H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.S., M.S., M.S., *Appellees*.

No. 1 CA-JV 21-0101
FILED 9-23-2021

Appeal from the Superior Court in Maricopa County
No. JD36739
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Neaverth
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

---

**H O W E**, Judge:

¶1        Jasmaine H. ("Mother") appeals the juvenile court's order terminating her parental rights to Mk. S. and Ma. S., born in March 2017, and Mt. S., born in November 2018. For the following reasons, we affirm.[1]

### FACTS AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). Mother has abused substances since the age of 13 and has used marijuana significantly since 18. The Department of Child Safety became involved with Mother in 2017 when Mk. S. and Ma. S. were born substance-exposed. It offered her substance-abuse treatment, but she failed to engage in the service and was closed out unsuccessfully.

¶3        In April 2018, Father attempted to strangle Mother, who was pregnant. Police intervened and charged Father with aggravated assault. Three months later and while still pregnant, Mother threatened suicide, and Father responded by choking her to unconsciousness. Police transported her to a psychiatric recovery center where the examining nurse found that she had injuries consistent with strangulation. After her stay in the recovery center, she reconciled with Father.

¶4        In November 2018, Mt. S. was born substance-exposed. The Department implemented a present danger plan that excluded Father from the home and identified a responsible adult as the children's full-time caregiver. It then petitioned for an in-home dependency because of Mother's substance abuse, mental-health issues, and domestic violence, and the juvenile court adjudicated the children dependent.

---

[1]        Mother is also the biological parent of M.R., born in December 2009. The juvenile court dismissed the dependency as to her, however, after she was returned to her biological father. Additionally, Talib S., the biological father ("Father") to Mk. S., Ma. S., and Mt. S., is not a party to this appeal.

¶5　　　　In January 2019, Mother and Father engaged in another physical altercation. The police arrested Father for outstanding warrants and Mother obtained an order of protection against him. The Department permitted the children to remain in the home so long as Mother did not allow Father into the home or have unsupervised visits with the children. The Department also provided a Family Preservation Team that worked to educate Mother about domestic violence. At the completion of the service, she continued to minimize Father's behaviors, and within the month, she and Father had again engaged in domestic violence. Consequently, she was admitted for mental-health observation and the children were placed in the care of relatives. The Department took legal custody of the children and placed them with a maternal aunt and uncle. It also conducted a Rapid Response assessment of the children and found that Mk. S. was autistic and nonverbal and that Ma. S. was developmentally delayed.

¶6　　　　The Department required that Mother resolve her substance-abuse, mental-health, and domestic-violence issues and demonstrate that she could protect her children from unsafe caregivers before she could reunify with her children. To achieve these goals, it provided her urinalysis testing, substance-abuse treatment, psychological evaluations after 30 days of sobriety, parent-aide services that included a domestic-violence component, supervised visitation, and requested that she refer herself for domestic-violence counseling.

¶7　　　　In February 2019, she checked into a five-day inpatient substance-abuse-treatment program where she admitted that she used marijuana, used cocaine bi-monthly, and "occasionally" used Adderall. After discharge, she declined to engage in the recommended out-patient-treatment program and consistently tested positive for marijuana, having received a medical marijuana card for chronic pain in March 2019.

¶8　　　　In August 2019, Mother submitted to a psychological evaluation with Dr. Leslie Montijo-Tai. Dr. Montijo-Tai diagnosed her with post-traumatic stress disorder, unspecified personality disorder with borderline and narcissistic traits, and cannabis-use disorder. She found that Mother still lacked an understanding about the dangers of domestic violence and that her untreated mental-health and substance-abuse issues impaired her ability to build a healthy emotional connection with the children and meet their needs.

¶9　　　　In fall 2019, Mother referred herself to counseling through her primary care provider and took an online class about the history of addiction to address her substance abuse. In March 2020, she obtained

another order of protection against Father. The Department commended her progress and implemented a reunification plan for her and the children in April 2020, including unsupervised visits. After she assured the Department and her Family Reunification Team that she had "no interactions with Father," it moved to change the children's physical custody to Mother in June 2020.

¶10 Days later, however, the Department received a "taunting" video that showed Father with the children the previous weekend. Mother initially denied the event. When showed the video, however, she admitted allowing Father into the home because she did not consider him a safety threat and he had a right to see his children. The Department therefore withdrew its motion to change custody, requested a change in case plan to severance and adoption, which the court granted later that month, and moved to terminate Mother's parental rights on the 15 months in out-of-home placement ground.

¶11 The Department continued to offer Mother urinalysis drug testing, supervised visits with the children, and referred her for another psychological evaluation with Dr. Stephanie Leonard, to determine whether she would benefit from additional reunification services. Dr. Leonard found that Mother still presented the same mental-health diagnosis from her earlier evaluation. She reported that although Mother had completed her services, her emotional issues prevented her from applying the skills she had learned, and therefore "impacted her ability to [protect the] children." She opined that Mother had already received reasonable services to assist her and that any additional time to demonstrate the required behavioral changes could "negatively impact the children." Meanwhile, the children thrived in their placement with their aunt and uncle, who met all their needs, complied with the safety plan, and were willing to adopt all three children.

¶12 The court began a four-day severance trial in January 2021. The Department's case manager testified that while Mother had substantially completed services, she had simply "gone through the motions" and failed to make the required behavioral changes necessary to reunify with her children. He stated that severance would serve the children's best interests because it allowed them to be adopted by their aunt and uncle. Furthermore, Drs. Leonard and Montijo-Tai agreed that Mother's lack of insight about her involvement with domestic violence and substance abuse would create continued emotional difficulties for her and affect her ability to be a safe caretaker for the children.

4

¶13    While Mother testified that she was not currently abusing marijuana, she admitted that she used marijuana during her current pregnancy despite being warned that it presented risks to the unborn child. While she testified that she had addressed her domestic violence during her services, she admitted that she did not feel threatened by Father and denied having been abused by him. Her only concern was that the children would mirror some of his behaviors.

¶14    The juvenile court terminated Mother's parental rights on the 15 months in out-of-home placement ground. It found that despite diligent services provided to Mother, she could not remedy her substance abuse, mental health, and domestic-violence issues. It found that she had "gone through the motions" of the services, had not changed her behavior, and that a substantial likelihood existed that she would not be capable of exercising proper and effective parental care and control in the near future. The court further found that even if she had made improvements, they were insufficient and too little, too late. It then found termination in the children's best interests because Mother was unable to handle the special needs of her children on a day-to-day basis and because termination would allow the aunt and uncle to adopt the children. Mother timely appeals.

## DISCUSSION

¶15    Mother argues that the court erred in terminating her rights and finding that termination was in the children's best interests. A juvenile court's termination determination is reviewed for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.,* 207 Ariz. 43, 47 ¶ 8 (App. 2004). To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8−533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Ariz. R.P. Juv. Ct. 66(C); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). Because the juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts, *Ariz. Dep't of Econ. Sec. v. Oscar O.,* 209 Ariz. 332, 334 ¶ 4 (App. 2004), we will affirm a termination decision unless no reasonable evidence supports it, *Xavier R. v. Joseph R.,* 230 Ariz. 96, 100 ¶ 11 (App. 2012).

¶16    To terminate parental rights for 15 months in an out-of-home placement, the juvenile court must find clear and convincing evidence that (1) the Department made diligent efforts to provide appropriate reunification services; (2) the child has been in an out-of-home placement for a cumulative total period of 15 months or longer under court order; (3)

the parent has been unable to remedy the circumstances that caused the child to be in an out-of-home placement; and (4) a substantial likelihood exists that the parent will be incapable of exercising proper and effective parental care and control in the near future. A.R.S. § 8–533(B)(8)(c).

¶17 Reasonable evidence supports the juvenile court's termination of Mother's parental rights. The children have been in out-of-home placement for more than 15 months. The Department diligently provided Mother with services, including two psychological evaluations, outpatient substance abuse treatment, parent-aide services, dialectical behavior therapy, supervised and unsupervised visits, and domestic-violence counseling.

¶18 Mother, though, has been unable to remedy the circumstances that caused the out-of-home placement and a substantial likelihood exists that she will be incapable of exercising proper and effective parental care in the near future. Despite being diagnosed with cannabis-use disorder and referred to urinalysis testing and substance-abuse treatment, she refused outpatient substance-abuse treatment and continuously tested positive for marijuana. Although she took a class on the history of addiction in fall 2019, it did not satisfy her substance-abuse treatment referral and did not change her behavior. In fact, she continued to use marijuana while pregnant, disregarding her doctor's suggestion not to and warning that it would likely have negative health consequences on her unborn child. She also failed to fully disclose her substance abuse in both of her psychological evaluations and continued to self-medicate with marijuana while rejecting medication to treat her mental-health issues.

¶19 And Mother failed to adequately address her engagement in domestic violence. On multiple occasions, Father had choked her to the point that she lost, or was about to lose, consciousness. At the termination hearing, she continued to minimize Father's actions and maintained that he had not physically abused her. Although she participated in domestic-violence classes and therapies, there were numerous reports of police involvement related to her and Father's actions. Mother also disregarded the Department's safety plan and her children's safety by allowing Father into the home. Her reasoning for allowing Father into the home was only that he had "a right" to visit his children, thereby placing her and Father's desires over the needs of her children's. Evidence therefore supports the juvenile court's order terminating Mother's parental rights to Mk. S., Ma. S., and Mt. S.

¶20　　　　Mother nonetheless argues that the Department failed to show that it made diligent efforts because it abandoned reunification services after it received Father's taunting video. She claims that the court abused its discretion in looking at Father's video and not recognizing the work Mother had put in over the case's duration. Contrary to Mother's position, the video clearly and convincingly evidences that while Mother superficially followed the Department's requirements, she failed to attain or regain the necessary skills to properly care for her children.

¶21　　　　Moreover, the Department is not required to offer every conceivable service to a parent. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235 ¶ 15 (App. 2011). Nor is the Department required to undertake rehabilitative measures that are futile or lack a reasonable prospect of success. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34 (App. 1999). Here, Mother demonstrated marked resistance to change, despite her participation in the services provided to her.

¶22　　　　Even so, the Department continued to provide supervised visits after the incident and referred Mother for a psychological evaluation with Dr. Leonard to determine what, if any, services would foster reunification. Dr. Leonard opined, however, that Mother had already received the services that would facilitate reunification and did not advise that any additional services were required. The court, therefore, did not err when it determined that the Department was not required to provide additional services. Mother's argument that if additional reunification services had happened, she would have made the necessary changes is speculative and ignores her own failure to follow her treatment plan and to make the required changes throughout the dependency.

¶23　　　　Mother argues next that the trial court erred in finding that the Department proved by the preponderance of the evidence that termination served the children's best interests. Termination of parental rights is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). In determining whether the child will benefit from termination, relevant factors to consider include whether the current placement is meeting the child's needs, an adoption plan is in place, and if the child is adoptable. *Demetrius L.*, 239 Ariz. at 1, 3–4 ¶ 12.

¶24　　　　Reasonable evidence supports the juvenile court's finding that termination of Mother's parental rights was in the children's best interests. The Department's case manager testified that the children were in

an adoptable placement that were meeting their needs and special needs. Both Drs. Leonard and Montijo-Tai testified that because Mother has failed to address her substance abuse and lacked insight into her mental-health issues, she would be unable to meet the children's needs and special needs if returned to her. The juvenile court, therefore, did not err in terminating Mother's parental rights to Mk. S., Ma. S., and Mt. S.

**CONCLUSION**

¶25 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA